UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
DANIEL ATKINSON,

                                        Plaintiff,

-against-

CITY OF NEWBURGH, *et al*,

                                                                    24-cv-6724 (NSR)
                                                                    OPINION & ORDER

                                        Defendants.

------------------------------------------------------------------------X
NELSON S. ROMÁN, United States District Judge:

Plaintiff Daniel Atkinson ("Plaintiff" or "Atkinson"), represented by counsel, brings this action pursuant to 42 U.S.C. § 1983 ("Section 1983") against the City of Newburgh, Police Officers Kevin Jodice ("Jodice"), Mark Mountain ("Mountain"), and Terrance Peterson ("Peterson"), and John and Jane Doe Defendants (collectively, "Defendants"), asserting claims for excessive force, false arrest, failure to intervene, and malicious prosecution against the individual Defendants, as well as a claim for municipal liability against the City of Newburgh *under Monell v. Department of Social Services*, 436 U.S. 658 (1978).

Before Court is Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC") under Federal Rules of Civil Procedure § 12(b)(6). (Mot., ECF No. 30.) For the reasons that follow, Defendants' motion is GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.    Factual Background

The following facts are drawn from the FAC and construed in the light most favorable to the Plaintiff at this stage.

1

On June 6, 2023, just before 11:30 a.m., Plaintiff encountered an individual in the hallway of 191 Broadway, Newburgh, New York, the building in which Plaintiff resides. (FAC ¶ 12.) The individual appeared to be attempting to steal tools. (*Id*.) Plaintiff confronted the individual and then followed him into the street. (*Id*. ¶ 13.) Defendant Officer Mountain observed Plaintiff on the public street and asked him, in sum and substance, what the problem was. (*Id*. ¶ 14.) Plaintiff, who was not engaged in any illegal activity, walked away from Defendant Mountain. (*Id*. ¶ 15.) Defendant Mountain's interaction with Plaintiff was observed by Defendants Peterson and Jodice. (*Id*. ¶ 16.)

As Plaintiff was walking away, a defendant officer, believed by Plaintiff to be Peterson, used force to detain and arrest Plaintiff by tackling him to the ground and fracturing his wrist. (*Id*. ¶ 17.) Once Plaintiff was on the ground, Defendants Mountain, Peterson, and Jodice participated in handcuffing and arresting him. (*Id*. ¶ 18.) Defendants then transported Plaintiff to the police precinct and subsequently to St. Luke's Hospital. (*Id*. ¶ 19.)

Defendant Mountain issued Plaintiff a desk appearance ticket compelling his appearance in Newburgh City Court to face charges of Obstruction of Governmental Administration. (*Id*. ¶ 20.) Plaintiff alleges that the criminal proceeding was initiated without probable cause. Plaintiff further alleges that he was compelled to return to court until October 6, 2023, at which time the charges were adjourned in contemplation of dismissal ("ACD"). (*Id*. ¶ 22.) The charges were ultimately dismissed and sealed on April 6, 2024. (*Id*. ¶ 22.)

As a result of the incident, Plaintiff sustained a displaced right distal radius fracture. (*Id*. ¶ 23.) On June 20, 2023, Plaintiff underwent open reduction internal fixation surgery to repair the fracture. (*Id*. ¶ 23.) The FAC alleges that Defendants Mountain, Peterson, Jodice, and John and

Jane Doe either directly participated in the acts described above or, in the alternative, failed to intervene. (*Id*. ¶ 24.)

Plaintiff further alleges that the foregoing acts were carried out by Defendants in their capacities as police officers and pursuant to the customs, usages, practices, procedures, and rules of the City of Newburgh and the Newburgh Police Department. (*Id*. ¶ 28.) Plaintiff additionally alleges that the incident was not isolated and that the City was aware, through lawsuits, the filings of notices of claim, complaints, and media coverage, of ongoing issues concerning the use of force by the Newburgh Police Department yet failed to take corrective action. (*Id*. ¶¶ 31-34.) Furthermore, the FAC asserts that the City of Newburgh was aware that the individual defendants lacked the objectivity, temperament, maturity, discretion, and disposition necessary to serve as police officers, yet retained them and failed to adequately train and supervise them. (*Id*. ¶ 35.)

## II.    Procedural Background

Plaintiff commenced this action on September 4, 2024, by filing a Complaint against Defendants City of Newburgh, Jodice, Mountain, Peterson, and John and Jane Doe Defendants, asserting claims arising from an incident occurring on June 6, 2023. (ECF No. 1.) Plaintiff subsequently filed the FAC on July 2, 2025. (*See generally* FAC, ECF No. 20.) On November 10, 2025, Defendants filed their motion to dismiss the FAC and corresponding memorandum of law in support. (Mot., ECF No. 30; Mem., ECF No. 32.) Plaintiff filed his opposition that same day (Opp., ECF No. 36) and Defendants filed a reply in further support of dismissal. (Reply, ECF No. 37.)

## LEGAL STANDARD

### I.    Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.

*Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## II.     42 U.S.C. Section 1983

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under Section 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

**DISCUSSION**

Plaintiff asserts twelve causes of action. (*See generally* FAC.) The first five are federal causes of action against Defendants under 42 U.S.C. Section 1983 for excessive force, false arrest, malicious prosecution, failure to intervene, and municipal liability. (*Id.* ¶¶ 37–53.) Plaintiff also raises multiple state-law claims. (*Id.* ¶¶ 64–103.) The Court addresses each claim in turn.

## I.    Federal Claims Against Individual Officers

### A.  Excessive Force

As a threshold matter, the Court dismisses the excessive force claims against Defendants Mountain and Jodice. To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim that is plausible on its face: *Ashcroft v. Iqbal,* 556 U.S. at 678. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, are insufficient. *Id*. In addition, where a Section 1983 claim is brought against individual defendants, the plaintiff must allege the personal involvement of each defendant in the alleged constitutional violation. *See Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir. 2010).

Here, although Plaintiff alleges that Mountain and Jodice used excessive force, the FAC does not allege how or when either defendant did so. According to Plaintiff, Mountain and Jodice were merely present during Plaintiff's arrest and participated in handcuffing him. (FAC ¶ 18.) It does not allege that the handcuffing caused injury, was excessively tight, or otherwise violated Plaintiff's constitutional rights. Moreover, it does not identify any other alleged use of force by Mountain or Jodice. (*See* Opp. at 5.)  Accordingly, the excessive force claims against Defendants Mountain and Jodice are dismissed.

The remaining issue is whether Plaintiff has plausibly stated that Peterson used excessive force during his initial interaction with Plaintiff. Claims alleging that law enforcement officers

used excessive force during an arrest, investigatory stop, or other seizure are analyzed under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Under this standard, courts balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the governmental interests at stake. *Id*. at 396 (quoting *United States v. Place*, 462 U.S. 696, 703 (1983)). This inquiry is fact-specific and requires careful attention to the facts and circumstances of each case, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.*; *see also Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985).

The pleadings reflect a single instance of excessive force against Plaintiff: that "as Plaintiff was lawfully walking away… [Peterson] used unreasonable force to detain and arrest Plaintiff, tackling Plaintiff to the ground without justification, fracturing Plaintiff's wrist." (FAC ¶ 17.) Applying the *Graham* factors to these allegations, Plaintiff has plausibly stated an excessive force claim against Peterson. The FAC does not allege facts suggesting that Plaintiff posed an immediate threat to officer safety, actively resisted arrest, or attempted to flee in a manner that would justify the degree of force allegedly used. According to Plaintiff, he was not engaged in illegal activity and was walking away when Peterson allegedly tackled him. (FAC ¶¶ 15, 17.) The force alleged was significant: Peterson tackled Plaintiff to the ground with enough force to fracture his wrist. (FAC ¶ 17.) Although Plaintiff's decision to walk away may have raised suspicion, such conduct does not, at this stage, justify the degree of force allegedly used or the resulting injury. Accepting these allegations as true and drawing all reasonable inferences in Plaintiff's favor, Plaintiff successfully states an excessive force claim against Peterson.

Accordingly, Plaintiff's excessive force claim against Peterson survives Defendants' motion to dismiss.

## B. False Arrest

A claim for false arrest under Section 1983 is "substantially the same" as a claim for false arrest under New York law. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012). Under New York law, a plaintiff asserting false arrest must establish that: "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Broughton v. State*, 37 N.Y.2d 451, 456 (1975). Probable cause constitutes a complete defense to a false arrest claim under both New York law and Section 1983. *Weyant*, 101 F.3d at 852; *Ackerson*, 702 F.3d at 19.

According to the FAC, Plaintiff alleges that Defendant Peterson used unreasonable force to detain and arrest him by tackling him to the ground without justification. (FAC ¶ 17.) Plaintiff further alleges that, once on the ground, Defendants Mountain, Peterson, and Jodice unnecessarily and unreasonably handcuffed and arrested him despite knowing that Plaintiff had not committed a crime. (*Id*. ¶ 18.) Construing these allegations in the light most favorable to Plaintiff, the FAC sufficiently pleads the first three elements of a false arrest claim. Defendants intended to confine Plaintiff using physical force and handcuffs, Plaintiff was conscious of the confinement, and Plaintiff did not consent to the confinement.

Defendants principally dispute whether each officer was personally involved in the arrest and whether the arrest was supported by probable cause. (Mem. at 5.) As to personal involvement, although the allegations concerning Jodice are sparse, Plaintiff specifically alleges that Mountain, Peterson, and Jodice participated in handcuffing and arresting him. (FAC ¶ 18.) While the FAC does not delineate the specific actions undertaken by each officer during the arrest, Plaintiff's

allegation that all three officers participated in handcuffing and arresting him permits the reasonable inference that each was personally involved in the challenged conduct. At the pleading stage, these allegations are sufficient to plausibly allege each officer's personal involvement in the arrest.

The remaining issue is whether the confinement was privileged, namely, whether Defendants had probable cause to arrest Plaintiff. In *Maryland v. Pringle*, the Supreme Court emphasized that probable cause is assessed under the totality of the circumstances by considering whether the historical facts, viewed from the standpoint of an objectively reasonable officer, establish probable cause. *Maryland v. Pringle,* 540 U.S. 366, 371 (2003). An officer's subjective intent or reasoning is irrelevant so long as the objective facts known to the officer support probable cause. *Zellner v. Summerlin*, 494 F.3d 344, 368–69 (2d Cir. 2007).

The FAC does not establish probable cause. Plaintiff alleges only that he was not engaged in illegal activity and walked away from Defendant Mountain. (FAC ¶ 15.) Courts have recognized that flight or refusal to cooperate, without additional indicia of criminal activity, is insufficient to establish probable cause. *See People v. Howard*, 50 N.Y.2d 583, 592 (1980); *see also United States v. Goines*, 604 F. Supp. 2d 533, 540 (E.D.N.Y. 2009) (finding that merely walking down the street, even near individuals who appeared to be smoking marijuana, did not itself establish probable cause). Thus, Plaintiff's decision to walk away, standing alone, does not establish probable cause for arrest.

Nor do the allegations in the FAC establish probable cause for Obstruction of Governmental Administration, the criminal offense with which Plaintiff was charged. To establish probable cause for that offense, Defendants must point to facts suggesting that Plaintiff intentionally obstructed, impaired, or prevented or attempted to prevent a public servant from

performing an official function through intimidation, physical force, interference, or by means of an independently unlawful act. *See* N.Y. Penal Law § 195.05; *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. 1995).

The FAC alleges only that Plaintiff, who was not engaged in any illegal activity, walked away from Defendant Mountain. (FAC ¶ 15.) It does not allege that Plaintiff physically interfered with an officer, prevented an officer from performing an official function, or otherwise engaged in independently unlawful conduct.

Defendants' probable-cause argument relies on facts not alleged in the FAC, including that Plaintiff and another man were running from officers or that the incident occurred in a chaotic scene requiring immediate police intervention. (Mem. at 8.) At the motion-to-dismiss stage, however, the Court is limited to the facts alleged in the FAC and must draw all reasonable inferences in Plaintiff's favor. *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013). Accepting those allegations as true, the Court concludes that Plaintiff has plausibly alleged that Officers Mountain, Peterson, and Jodice lacked probable cause to arrest him. Because probable cause constitutes the privilege that defeats a false arrest claim, and no such privilege has been adequately established for purposes of this motion, Defendants' motion to dismiss Plaintiff's false arrest claim must be denied.

### C. Section 1983 Malicious Prosecution

To prevail on a Section 1983 malicious prosecution claim, a plaintiff must plausibly allege a Fourth Amendment violation and the elements of malicious prosecution. *See Guillen v. City of New York*, 625 F. Supp. 3d 139, 154–55 (S.D.N.Y. 2022). Under New York law, those elements are: "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for the defendant's actions." *Dettelis v. Sharbaugh*, 919 F.3d 161,

9

163 (2d Cir. 2019) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). In their motion papers, Defendants address only the first three elements of Plaintiff's malicious prosecution claim. (*See generally* Mem.)

As a threshold matter, Plaintiff appears to assert this claim only against Defendant Mountain, who allegedly issued the appearance ticket charging Plaintiff with Obstruction of Governmental Administration. (FAC ¶ 20.) It is well established that, "[t]o establish a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Accordingly, to the extent the FAC can be construed to assert a malicious prosecution claim against Defendants Peterson or Jodice, that claim must be dismissed because the FAC contains no allegations plausibly suggesting their personal involvement in the initiation or continuation of the prosecution. *See Tarrant v. City of Mount Vernon*, No. 20-CV-09004 (PMH), 2021 WL 5647820, at 9-10 (S.D.N.Y. Dec. 1, 2021)

In the Section 1983 context, a plaintiff must also demonstrate "a seizure or other perversion of proper legal procedures implicating [his] personal liberty and privacy interests under the Fourth Amendment." *Lanning v. City of Glens Falls*, 908 F.3d 19, 24 (2d Cir. 2018), *abrogated* on other grounds by *Thompson v. Clark*, 596 U.S. 36 (2022). Post-arraignment restrictions may constitute such a seizure where, for example, a plaintiff is required to make repeated court appearances or is subject to travel restrictions. *See Murphy v. Lynn*, 118 F.3d 938, 946 (2d Cir. 1997). By contrast, a pre-arraignment, non-felony summons requiring a later court appearance, without additional restrictions, does not constitute a Fourth Amendment seizure. *Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010). Thus, to state a Section 1983 malicious prosecution claim, Plaintiff must plausibly

10

allege that the criminal proceeding caused a deprivation of liberty consistent with the Fourth Amendment.

Here, Plaintiff alleges that he was issued a desk appearance ticket that compelled him to appear in Newburgh City Court and required him to return to court on October 6, 2023. (FAC ¶¶ 20, 22.) However, the FAC does not specify whether or when Plaintiff was arraigned, how many mandatory court appearances he made, whether Plaintiff was subjected to any travel restrictions or conditions of release, or whether any additional restraints were imposed on his liberty during the pendency of the proceedings. Indeed, Plaintiff's opposition acknowledges that the FAC does not presently plead the number of court appearances or arraignment-related facts, although Plaintiff contends those facts could be added by amendment. (Opp. at 8.)

Unlike in *Murphy*, Plaintiff does not allege multiple mandatory court appearances coupled with significant restrictions on his liberty. Rather, the allegations are more closely aligned to those in *Burg*, where the issuance of a summons requiring a future court appearance, without more, was held insufficient to constitute a Fourth Amendment seizure. *See Burg*, 591 F.3d at 98. Thus, to the extent Plaintiff alleges that the required court appearance or appearances constituted a deprivation of liberty, those allegations are insufficient. On this basis, Plaintiff's Section 1983 malicious prosecution claim is dismissed without prejudice.

Because Plaintiff's Section 1983 malicious prosecution claim fails for lack of a pleaded Fourth Amendment seizure, the Court need not decide whether Plaintiff has adequately pleaded actual malice. Nor does the Court dismiss the Section 1983 malicious prosecution claim based on favorable termination. Under *Thompson v. Clark*, a plaintiff asserting a Fourth Amendment

malicious prosecution claim under Section 1983 need only show that the criminal prosecution ended without a conviction. *Thompson v. Clark,* 596 U.S. 36, 49 (2022).[1]

### D. Failure to Intervene

The Second Circuit has long recognized that law enforcement officers have an affirmative duty to intervene to prevent fellow officers from violating an individual's constitutional rights where they possess a realistic opportunity to do so. *See Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). An officer who fails to intervene may be held liable for the preventable harm caused by another officer where the officer observes or has reason to know that: (1) excessive force is being used, *see O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988); (2) a citizen has been unjustifiably arrested, *see Gagnon v. Ball,* 696 F.2d 17, 21 (2d Cir. 1982); or (3) another constitutional violation has been committed by a law enforcement official, *see O'Neill,* 839 F.2d at 11. Liability attaches only where the officer had a realistic opportunity to intervene and prevent the harm from occurring. *Anderson*, 17 F.3d at 557; *O'Neill*, 839 F.2d at 11–12. Whether an officer had sufficient time or was otherwise capable of preventing the harm is generally a question of fact for the jury, unless, viewing the evidence in the light most favorable to the plaintiff, no reasonable jury could conclude that the officer had a realistic opportunity to intervene. *Anderson*, 17 F.3d at 557.

Here, Plaintiff fails to plausibly allege a failure-to-intervene claim based on Peterson's alleged use of force. To the extent the claim is asserted against Peterson, it is duplicative of the excessive force claim because Peterson is the officer alleged to have used the force. As to

---

[1] Under *Thompson v. Clark*, a Section 1983 malicious prosecution plaintiff need only show that the underlying criminal prosecution ended without a conviction; he need not show that the termination affirmatively indicated innocence. 596 U.S. 36, 49 (2022). Accordingly, although an ACD may not constitute favorable termination for purposes of a New York malicious prosecution claim, the ACD does not, by itself, defeat the favorable-termination element of Plaintiff's Fourth Amendment malicious prosecution claim under Section 1983.

Defendants Mountain and Jodice, the FAC does not plead facts establishing that either officer had a realistic opportunity to intervene before the alleged tackle occurred. Plaintiff alleges only that Defendants "participated in needlessly and otherwise unreasonably handcuffing plaintiff" (FAC ¶ 18) but does not plead facts establishing where Mountain or Jodice were positioned, whether they observed Peterson's alleged tackle, how rapidly the incident unfolded, or whether either officer had sufficient time to prevent the alleged use of force before it occurred.

Even assuming Mountain or Jodice were present, Plaintiff alleges only a single tackle, not a prolonged use of force or a series of acts that would have afforded another officer time to intervene. The FAC contains no allegations suggesting that the alleged tackle was prolonged or that the force continued for a sufficient duration such that another officer could realistically intervene. *See O'Neill,* 839 F.2d at 11–12 (holding that officers lacked a realistic opportunity to intervene where the use of force occurred in "rapid succession"). Rather, the allegations suggest a single, rapidly unfolding use of force occurring during Plaintiff's attempted detention, followed by an immediate handcuffing.

Because Plaintiff fails to plausibly allege that Mountain or Jodice had sufficient time or ability to prevent Peterson's alleged tackle, the failure-to-intervene claim must be dismissed to the extent it is predicated on excessive force. To the extent Plaintiff predicates the claim on the alleged false arrest, the claim is duplicative because Plaintiff alleges that the individual officers directly participated in the arrest rather than merely failing to stop another officer's conduct. Accordingly, Plaintiff's failure-to-intervene claim is dismissed without prejudice.

## II.    The *Monell* Claim

Under *Monell v. Department of Social Services*, a municipality may be held liable under Section 1983 where a plaintiff demonstrates that the deprivation of a constitutional right was caused by an official municipal policy, custom, or practice. 436 U.S. 658, 690–91 (1978).

13

However, a municipality may not be held liable solely on a theory of respondeat superior for the unconstitutional acts of its employees. *Id*. at 691. To state a *Monell* claim, a plaintiff must plausibly allege "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020) (internal quotation marks omitted).

As the Supreme Court later clarified, municipal liability under *Monell* carries a stringent causation requirement; the municipal policy or custom must be the "moving force" behind the alleged constitutional injury. *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Accordingly, failure-to-train or failure-to-supervise claims generally require factual allegations showing a pattern of similar constitutional violations demonstrating deliberate indifference by the municipality. *Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). A single incident of unconstitutional conduct is ordinarily insufficient to impose *Monell* liability absent facts showing that the conduct was caused by an existing unconstitutional municipal policy. *City of Oklahoma City v. Tuttle, 471 U.S. 808, 823–24 (1985).* Moreover, a plaintiff must plausibly allege an "affirmative link" between the alleged training deficiencies and the specific constitutional violation at issue, such that the municipal policy was the "moving force" behind the injury. *Clarke v. Antonini*, No. 21 CIV. 1877 (NSR), 2022 WL 4387357, at *6 (S.D.N.Y. Sept. 22, 2022).

Plaintiff alleges that Defendants' conduct was carried out pursuant to a "custom, usage, practice, procedure, or rule" prohibited by the United States Constitution. (FAC ¶ 29.) The FAC further alleges that the incident at issue "was not an isolated incident," and that the City was aware, "from lawsuits, notices of claim, and complaints filed with the Newburgh Police Department," that

its officers, including the named Defendants, were insufficiently trained regarding the use of force. (*Id.* ¶ 31.)

The FAC identifies four lawsuits alleging that officers of the Newburgh Police Department used excessive force while effectuating arrests and taking individuals into custody. (*Id*. ¶ 32.) Plaintiff also references media coverage allegedly documenting ongoing and systemic issues concerning the use of force within the Newburgh Police Department. (*Id*. ¶ 33.) The FAC further alleges that the City was aware that the individual officers lacked the "objectivity, temperament, maturity, discretion, and disposition" necessary to serve as police officers. (*Id*. ¶ 35.) Despite this alleged awareness of the officers' disposition and the recurring systemic issues within the department, Plaintiff contends that the City nevertheless "failed to take corrective action." (*Id*. ¶ 34.)

These general allegations, lacking in any specificity, are insufficient to state a plausible *Monell* claim. Although Plaintiff references prior lawsuits and media reports concerning alleged excessive force by Newburgh police officers, the FAC does not plead facts describing the underlying incidents, the officers involved, the disposition of those matters, whether the City admitted wrongdoing or was found liable, or how those incidents plausibly placed the City on notice of the particular training or supervisory deficiencies alleged here. Nor does the FAC allege facts connecting any municipal policy, custom, or failure to train to the constitutional injuries Plaintiff allegedly suffered.

Indeed, in *Tieman v. City of Newburgh*, the court rejected similar allegations against the same Defendant, holding that references to other lawsuits, standing alone, were insufficient to plausibly allege a widespread municipal custom or policy for purposes of *Monell* liability. *Tieman v. City of Newburgh*, No. 13-CV-4178 (KMK), 2015 WL 1379652, at *17 (S.D.N.Y. Mar. 26,

15

2015). The same deficiency is present here. Plaintiff relies principally on generalized assertions and references to unrelated incidents but alleges no facts plausibly demonstrating a persistent and widespread municipal practice, deliberate indifference on the part of municipal policymakers, or a direct causal connection between any municipal policy or custom and the constitutional violations alleged. Accordingly, Plaintiff has failed to plausibly allege that a municipal policy or custom was the moving force behind the alleged constitutional injuries. Defendants' motion to dismiss Plaintiff's *Monell* claim is therefore granted, and the claim is dismissed without prejudice.

### III.    Qualified Immunity

The doctrine of qualified immunity shields individual government officials from civil liability unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established only where its contours are sufficiently definite so that a reasonable official would understand that his conduct violates that right. *Kisela v. Hughes*, 584 U.S. 100, 104 (2018).

Typically, the defense of qualified immunity will "rest on an evidentiary showing of what the defendant did and why." *Lamzot v. Phillips*, No. 04-CV-6719 (LAK), 2006 WL 686578, at *8 (S.D.N.Y. Mar. 16, 2006) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 334 (2d Cir. 2003)). On a Rule 12(b)(6) motion, however, "the facts supporting the defense [must] appear on the face of the complaint." *Id.* (citing *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998)). Accordingly, dismissal on qualified-immunity grounds is appropriate only where the defendants' entitlement to the defense is established as a matter of law. *Id.* (quoting *Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1494 (2d Cir. 1992)). Because only Plaintiff's excessive force claim against Peterson and false arrest claims against Mountain, Peterson, and Jodice survive Defendants' motion to dismiss, the Court considers whether the individual Defendants are nevertheless entitled to qualified immunity on those surviving federal claims.

16

### A. Excessive Force

According to Plaintiff, Peterson tackled him to the ground with enough force to fracture his wrist, even though Plaintiff was not engaged in illegal activity, did not pose an immediate threat, and was walking away. (FAC ¶¶ 15, 17.) Accepting those allegations as true and drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude from the face of the FAC that Peterson's alleged use of force was objectively reasonable as a matter of law. Nor can the Court conclude, at this stage, that Peterson is entitled to qualified immunity. Viewing the allegations in the light most favorable to Plaintiff, a reasonable officer would have understood that tackling a non-threatening, non-resisting individual with sufficient force to fracture his wrist, absent any apparent justification, violated the Fourth Amendment. Accordingly, Peterson is not entitled to qualified immunity at this stage.

### B. False Arrest

In the false arrest context, an officer is entitled to qualified immunity if there was "arguable probable cause" to arrest, meaning that "officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski v. City of Hartford,* 723 F.3d 382, 390 (2d Cir. 2013). Here, the FAC alleges that Plaintiff was not engaged in illegal activity, that Defendants knew Plaintiff had not committed a crime, and that Defendants nevertheless handcuffed and arrested him. (FAC ¶¶ 15, 18.) The FAC further alleges no facts showing that Plaintiff physically interfered with an officer, prevented an official function, or engaged in independently unlawful conduct that would establish arguable probable cause for Obstruction of Governmental Administration.

Taking the allegations in the FAC as true, the Court cannot conclude, as a matter of law, that officers of reasonable competence could disagree regarding the existence of probable cause where Plaintiff was allegedly not engaged in any illegal activity and where the FAC does not

17

otherwise establish arguable probable cause for the charged offense. Accordingly, Defendants Mountain, Peterson, and Jodice are not entitled to qualified immunity on Plaintiff's false arrest claim at the motion to dismiss stage.

## IV. State Law Claims

### A. Notice of Claim

In their motion to dismiss, Defendants argue that "in federal court, state notice-of-claim statutes apply to state-law claims." *See Hardy v. N.Y.C. Health & Hosps. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999). Under New York General Municipal Law § 50-e(1)(a), a plaintiff asserting state-law tort claims against a municipality or its employees acting within the scope of their employment must serve a notice of claim "within ninety days after the claim arises." N.Y. Gen. Mun. Law § 50-e(1)(a). Plaintiff's state-law claims arising from the arrest and alleged use of force accrued no earlier than June 6, 2023, the date of the underlying incident. Plaintiff's malicious prosecution claim, by contrast, accrued on April 6, 2024, when the criminal charges were dismissed and sealed. (FAC ¶¶ 12, 22.)

Defendants contend that Plaintiff failed to timely serve a notice of claim and that Plaintiff's state-law claims must therefore be dismissed (Mem. at 16), but dismissal is not warranted at this stage. The exhibits submitted with Plaintiff's opposition show that Plaintiff's Notice of Claim was dated August 31, 2023, and mailed via United States Postal Service certified mail on September 1, 2023. (*See* Ex. B, ECF No. 31-2.) Under N.Y. Gen. Mun. Law § 50-e(3)(a), service by certified mail is complete upon deposit in the mail, not upon receipt by the municipality. Because the arrest and alleged use of force occurred on June 6, 2023, Plaintiff's September 1, 2023, mailing fell within ninety days of the accrual of those claims. Accordingly, Plaintiff's notice of claim was timely. To the extent Defendants seek dismissal of Plaintiff's state-law malicious prosecution claim on notice-of-claim grounds, dismissal is likewise unwarranted. The FAC alleges that the claim accrued on

April 6, 2024, and that Plaintiff served a supplemental notice of claim within ninety days of that date. (FAC ¶ 22.) At this stage, those allegations are sufficient to plausibly allege compliance with New York's notice-of-claim requirements. Accordingly, Defendants' motion to dismiss on that ground is denied.

### B.  Remaining State-Law Claims and Supplemental Jurisdiction

Under 28 U.S.C. § 1367(a), federal district courts may exercise supplemental jurisdiction over state-law claims that are so related to claims within the court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution. 28 U.S.C. § 1367(a). In *United Mine Workers v. Gibbs*, the Supreme Court held that federal courts may exercise jurisdiction over state-law claims when those claims derive from a "common nucleus of operative fact" with the federal claims such that a plaintiff would ordinarily be expected to try them all in one judicial proceeding. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

Here, Plaintiff's state-law claims arise from the same June 6, 2023, incident underlying the surviving federal claims and involve the same parties, arrest, alleged use of force, handcuffing, criminal charge, and subsequent prosecution. (*See generally* FAC.) Accordingly, the state and federal claims derive from a common nucleus of operative fact and form part of the same case or controversy under Article III. Because federal claims remain in this action, the Court exercises supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367. To the extent Defendants seek dismissal of Plaintiff's state-law false arrest claim on the same probable-cause grounds as Plaintiff's federal false arrest claim, Defendants' motion is denied for the reasons previously stated. *See De Lourdes Torres v. Jones*, 26 N.Y.3d 742, 759 (2016).

Plaintiff's state-law assault and battery claims also survive at this stage. Under New York law, a battery requires intentional bodily contact that is harmful or offensive in nature. *Doe v. Alsaud*, 224 F. Supp. 3d 286, 294 (S.D.N.Y. 2016). An assault requires an intentional act placing

19

another person in reasonable apprehension of imminent harmful or offensive contact. *Farash v. Cont'l Airlines, Inc.*, 574 F. Supp. 2d 356, 368 (S.D.N.Y. 2008), aff'd, 337 F. App'x 7 (2d Cir. 2009).

Here, Plaintiff alleges that Peterson tackled him with sufficient force to fracture his wrist and that Defendants thereafter handcuffed and arrested him without probable cause. These allegations arise from the same conduct underlying Plaintiff's excessive force and false arrest claims. Because the Court concludes that Plaintiff has plausibly alleged that Peterson used excessive force and that the arrest was unsupported by probable cause, Defendants have not established, at this stage, that the challenged physical contact was privileged. Accordingly, Plaintiff's state-law assault and battery claims survive.

Plaintiff's state-law malicious prosecution claim, however, must be dismissed. Unlike a Fourth Amendment malicious prosecution claim under § 1983, New York law continues to require that the underlying criminal proceeding terminate in a manner indicative of the accused's innocence. *Loeb v. Teitelbaum*, 77 A.D.2d 92, 98 (2d Dep't 1980), amended, 80 A.D.2d 838 (2d Dep't 1981); *Hollender v. Trump Vill. Coop., Inc.*, 58 N.Y.2d 420, 425–26 (1983). An adjournment in contemplation of dismissal ("ACD"), because it is not a disposition on the merits, does not constitute a favorable termination for purposes of a New York malicious prosecution claim. *Hollender*, 58 N.Y.2d at 425–26; *Rothstein v. Carriere*, 373 F.3d 275, 286–87 (2d Cir. 2004).

Here, Plaintiff alleges that the underlying criminal proceeding was resolved by an ACD. (FAC ¶ 22.) Because such a disposition does not satisfy New York's favorable termination requirement, Plaintiff fails to plausibly allege a state-law malicious prosecution claim. Accordingly, that claim is dismissed with prejudice.

20

Plaintiff's standalone negligence claim is also dismissed without prejudice. Under New York law, "[t]he elements of a cause of action alleging common-law negligence are a duty owed by the defendant to the plaintiff, a breach of that duty, and a showing that the breach of that duty constituted a proximate cause of the injury." *Gutkina v. Max Media & Art, LLC*, 227 A.D.3d 961, 963 (2d Dep't 2024) (quoting *Roberson v. Wyckoff Hgts. Med. Ctr.*, 123 A.D.3d 791, 792 (2d Dep't 2014)). Here, Plaintiff's negligence claim is based on the same operative facts and alleged misconduct underlying his intentional tort claims for false arrest, assault, and battery. Because the claim does not allege any independent negligent conduct distinct from the intentional acts giving rise to those claims, it is duplicative and must be dismissed.

Plaintiff's negligent screening, hiring, retention, training, and supervision claims against the city are dismissed without prejudice. Under New York law, to state a claim for negligent hiring, retention, training, or supervision, a plaintiff must plausibly allege the elements of common-law negligence, as well as: (1) the existence of an employer-employee relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct that caused the plaintiff's injury; and (3) a nexus between the employer's alleged negligence in hiring, retaining, training, or supervising the employee and the plaintiff's injuries. *See Sokola v. Weinstein*, 78 Misc. 3d 842, 846–47, 187 N.Y.S.3d 493, 500 (N.Y. Sup. Ct. 2023) (citing *Kenneth R. v. Roman Catholic Diocese of Brooklyn*, 229 A.D.2d 159, 161, 654 N.Y.S.2d 791 (2d Dep't 1997*); Roe v. Domestic & Foreign Missionary Soc'y of the Protestant Episcopal Church*, 198 A.D.3d 698, 701 (2d Dep't 2021)).

Here, Plaintiff expressly alleges that the individual officers were acting within the scope of their employment during the events at issue. (FAC ¶ 28.) Under New York law, where an employer concedes—or the plaintiff alleges—that the employee was acting within the scope of his or her

employment, claims for negligent hiring, retention, training, and supervision are generally unavailable because the employer's liability, if any, arises under the doctrine of respondeat superior. *See Karoon v. N.Y.C. Transit Auth.*, 241 A.D.2d 323, 324 (1st Dep't 1997) (citing *Eifert v. Bush*, 27 A.D.2d 950 (2d Dep't 1967), aff'd, 22 N.Y.2d 681 (1968)). Accordingly, Plaintiff's negligent screening, hiring, retention, training, and supervision claims are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART. Defendants' motion is denied as to Plaintiff's excessive force claim against Defendant Peterson, Plaintiff's false arrest claims against Defendants Mountain, Peterson, and Jodice, and Plaintiff's state-law false arrest, assault, and battery claims.

Defendants' motion is granted as to Plaintiff's excessive force claims against Defendants Mountain and Jodice, Plaintiff's Section 1983 and state-law malicious prosecution claims, Plaintiff's failure-to-intervene claim, Plaintiff's *Monell* claim against the City of Newburgh, Plaintiff's negligent screening, hiring, retention, training, and supervision claims, and Plaintiff's standalone negligence claim. Plaintiff's Section 1983 malicious prosecution claim is dismissed without prejudice. Plaintiff's state-law malicious prosecution claim is dismissed with prejudice. The remaining claims on which Defendants' motion is granted are dismissed without prejudice.

The Court further concludes that Defendants Mountain, Peterson, and Jodice are not entitled to qualified immunity at this stage with respect to Plaintiff's surviving false arrest claims, and that Defendant Peterson is not entitled to qualified immunity at this stage with respect to Plaintiff's surviving excessive force claim.

Plaintiff is granted leave to file a Second Amended Complaint as to the claims dismissed without prejudice. Plaintiff shall have until July 31, 2026, to do so consistent with this Opinion and Order. Plaintiff is advised that any Second Amended Complaint will replace, not supplement, the First Amended Complaint, and therefore must include all claims and factual allegations Plaintiff wishes to pursue against any Defendant. If Plaintiff files a Second Amended Complaint, Defendants shall answer or otherwise respond to the Second Amended Complaint within twenty-one days of its filing. If Plaintiff does not file a Second Amended Complaint by July 31, 2026, Defendants shall answer the First Amended Complaint as to the surviving claims within twenty-one days after that deadline.

The Clerk of Court is respectfully directed to terminate the motion at ECF No. 30

Dated: June 29, 2026
White Plains, New York

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge

23